J-S35023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GARTH R. BATES | : | |
| | : | |
| Appellant | : | No. 118 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 20, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004999-2021

BEFORE: PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.: **FILED: OCTOBER 7, 2024**

Garth R. Bates (Appellant) appeals from the judgment of sentence imposed after the trial court revoked his probation. We affirm.

The trial court summarized the circumstances underlying Appellant's initial conviction:

On June 13, 2023, Appellant pled guilty to [two counts] of Sexual Abuse of Children—Possession of Child Pornography … and three counts of Criminal Use of a Communication Facility….[1] During [Appellant's] plea hearing, the [Commonwealth] summarized the events leading [to] Appellant's conviction as follows:

Pursuant to [a search warrant executed at Appellant's residence], a number of electronic devices were recovered. On a laptop possessed by [Appellant], there were 27 … child pornography images depicting indecent contact. Additionally, there were 411 nude images of children under the age of 18. There [were] also 432 images of children depicting sexual acts. On

---

[1] 18 Pa.C.S.A. §§ 6312(d), 7512(a).

an Amazon tablet, [there were] nine images of children [depicting] indecent contact and 195 images of nude children. [F]inally, on an iPhone there were four images of child pornography.

[N.T., 6/13/23, at 3-4]. Appellant admitted to possessing the images and was sentenced … to two years['] house arrest, followed by eight years['] probation.

Trial Court Opinion, 3/19/24, at 1-2 (footnote added).

The trial court recounted the events leading to Appellant's probation revocation:

Lancaster County Probation Officer Derek Warner ("PO Warner") was assigned to supervise Appellant and first met with him on June 21, 2023. [N.T., 9/5/23, at 5, 8]. As part of Appellant's sentence, he was made subject to Sex Offender Conditions [(Sex Offender Rules or the rules)] and the Rules and Regulations of Lancaster County Adult Probation and Parole Services. Of particular relevance to the instant appeal, Appellant agreed to the following condition when he entered his guilty plea:

> [Rule] 23. **I shall only use internet devices that have been authorized for my use.** I will only utilize operating systems that are approved by Lancaster County [Adult Probation and Parole Services]. I shall not possess any other internet devices or allow another individual to bring or possess an[] unauthorized internet device in my home. I shall log in to my authorized internet device using my assigned user name. **I will not own, use, or possess any other device which allows internet access other than what is authorized by my probation/parole officer.**

[Sentencing Order, 6/13/23, Sex Offender Rules, ¶ 23 (emphasis added)]. After PO Warner reviewed the applicable terms and conditions with Appellant at their first meeting, Appellant threw his copy of the regulations on PO Warner's desk and announced that he was not planning to abide by the rules. [N.T., 9/5/23, at 8].

On June 26, 2023, PO Warner learned that Appellant had installed a security camera on the property where he was residing[,] overlooking a swimming pool that neighborhood children frequented. [*Id.* at 9]. Appellant had access to the camera feed on an application on his smartphone. [*Id.*] The next day, PO Warner informed Appellant that his residence was no longer … approved because [children regularly visited the swimming pool], that Appellant was no longer permitted to work as an under-the-table maintenance person for the owner of the property,[2] and that he was required to replace his smartphone with an internet-free flip phone. [*Id.*]

When Appellant appeared for his next appointment with PO Warner, Appellant informed PO Warner that he had not complied with any of PO Warner's directives and had not deleted the security camera app. [*Id.* at 10, 15]. Accordingly, PO Warner seized Appellant's smartphone. [*Id.* at 10]. When Appellant reported for an appointment on July 28, 2023, PO Warner observed a different smartphone sticking out of Appellant's shirt pocket. [*Id.* at 11]. Appellant claimed that the phone belonged to his mother and that he was using the smartphone only to arrange rides to and from his probation appointment. [*Id.*] When PO Warner examined this second smartphone, it appeared that Appellant had actually been using the phone since approximately July 5, 2023. [*Id.* at 12]. Text messages on the phone indicated that Appellant had also been continuing his work as a maintenance person at the restricted property[,] despite PO Warner's instruction to stop. [*Id.*] Consequently, PO Warner detained Appellant and filed a probation violation stemming from Appellant's use and possession of the unauthorized smartphone[,] in violation of Rule 23. [*Id.*]

_____

[2] Appellant resided at the same property where he worked as a maintenance person. PO Warner testified Appellant's employment responsibilities included maintenance of the swimming pool. N.T., 9/5/23, at 9. Sex Offender Rule 20 prohibited Appellant from "visit[ing] places where children congregate including, but not limited to, … **swimming pools** … without an approved supervisor." Sex Offender Rules, ¶ 20 (emphasis added). Rule 18 prohibited Appellant from "accept[ing] employment … that directly or indirectly involves minors…." *Id.*, ¶ 18.

On September 5, 2023, following a **Gagnon I**[3] and Probation Violation Hearing, [the trial court] determined that Appellant violated the terms of his supervision. [**Id.** at 36]. [The trial court] revoked [Appellant's] prior sentence and ordered a Pre-Sentence Investigation. [**Id.** at 36-37]. On November 20, 2023, [the trial court] resentenced [Appellant] to an aggregate period of two to ten years['] incarceration.

Trial Court Opinion, 3/19/24, at 2-4 (footnotes added).

Appellant filed a timely post-sentence motion, which the trial court denied. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) concise statement, and the trial court filed an opinion under Pa.R.A.P. 1925(a).

Appellant presents a single issue for our review:

Did the trial court err in finding that [Appellant] violated the rules of his probation by being in possession of a cellphone[,] where the probation officer never asked [Appellant] to allow him to put monitoring software on the cellphone as required by the sex offender conditions imposed at sentencing, instead seizing the phone and demanding [Appellant] purchase a flip phone with no internet access?

Appellant's Brief at 5.

Appellant argues that Sex Offender Rule 23 "must be read *in pari materia* with Rules 21 through 30, which prescribe[] monitoring software for sex offenders using the internet, and not a complete ban on internet use or possession of a smart phone." **Id.** at 29. Appellant contends PO Warner "lacked [the] authority" to ban Appellant's smartphone use, "rather than simply install monitoring software as prescribed by Rules 21 through 30, …

---

[3] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

- 4 -

particularly where there was no evidence that monitoring software would be inadequate." ***Id.*** at 20.

> When considering an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." ***Commonwealth v. Perreault***, 930 A.2d 553, 557 (Pa. Super. 2007) (citations omitted); ***see also*** 42 Pa.C.S.A. § 9771(b). Revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. ***Commonwealth v. Smith***, 669 A.2d 1008, 1011 (Pa. Super. 1996)….
>
> In order to revoke a defendant's probation, "the [trial] court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime…." ***Commonwealth v. Foster***, 214 A.3d 1240, 1243 (Pa. 2019); ***see also*** 42 Pa.C.S.A. § 9771. "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence." ***Commonwealth v. Moriarty***, 180 A.3d 1279, 1286 (Pa. Super. 2018) (citation omitted). … It is well settled that "[p]robation may be revoked on the basis of conduct which falls short of criminal conduct." ***Commonwealth v. Colon***, 102 A.3d 1033, 1042 (Pa. Super. 2014) (citation omitted).

***Commonwealth v. Parson***, 259 A.3d 1012, 1019 (Pa. Super. 2021) (some citations and paragraph breaks modified).

Instantly, though Appellant's argument calls for an *in pari materia* reading of Sex Offender Rules 21 through 30, his brief fails to quote or reference any specific language contained in those rules. ***See generally*** Appellant's Brief. Appellant baldly maintains the rules "prescribe" that "his

probation officer [must] give [Appellant] the opportunity to have a cellphone with monitoring software." *Id.* at 17. However, Appellant's failure to engage with the rules' specific language leaves us unable to discern how he arrived at that conclusion.

Nevertheless, our reading of the rules points to a different conclusion.[4] Rules 21 and 22 state:

> 21. **I will allow monitoring software to be installed on any eligible internet device** in my residence and/or at my place of employment. I will allow my probation/parole officer to inspect, maintain, and troubleshoot the monitoring software.
>
> 22. **I agree to pay the cost of the monitoring software** as directed by my probation/parole officer. If I do not allow, or the internet device's owner does not allow such monitoring, I understand I will need to find a new residence or agree to remove all internet devices from the residence.

Sex Offender Rules, ¶¶ 21-22 (emphasis added). Rule 23 provides, in relevant part: "I shall only use internet devices that have been authorized for my use. … I will not own, use, or possess any other device which allows internet access other than what is authorized by my probation/parole officer." *Id.*, ¶ 23. Rules 24 through 30 set forth additional restrictions on internet use, but contain nothing relevant to Appellant's argument. *Id.*, ¶¶ 24-30.

We observe that the Sex Offender Rules do not specifically require probation officers to employ monitoring software. *See id.*, ¶¶ 21-30.

---

[4] The trial court did not directly address Appellant's contention that the Sex Offender Rules required PO Warner to employ monitoring software rather than revoke Appellant's smartphone privileges. *See generally*, Trial Court Opinion, 3/19/24.

Moreover, the rules do not state that the availability of monitoring software limits a probation officer's authority to withhold or revoke authorization regarding the use of any particular internet device. *Id.* Our review discloses no support for Appellant's argument that the rules required PO Warner to allow Appellant to use a smartphone with monitoring software, rather than revoke Appellant's smartphone privileges.

Additionally, Appellant ignores Rule 22's requirement that the probationer "pay the cost of the monitoring software…." *Id.*, ¶ 22. Appellant testified that, at his first meeting with PO Warner, Appellant expressed concern that he could not afford the cost of the monitoring software. N.T., 9/5/23, at 26. Appellant also testified that he did not get a flip phone because he could not afford one. *Id.* at 32; *see also* Appellant's Brief at 14, 22 (arguing Appellant could not afford a flip phone). Thus, even if the rules had required PO Warner to consider employing monitoring software, Appellant's admitted inability to pay the cost would have foreclosed that option.

Our review discloses that, rather than require Appellant to use costly monitoring software from the outset of his probation, PO Warner initially afforded Appellant the less-restrictive privilege of unmonitored smartphone use. However, PO Warner soon learned Appellant's smartphone gave Appellant inappropriate access to security footage of children using a swimming pool. N.T., 9/5/23, at 9; *see also id.* (PO Warner learned Appellant's employment involved maintenance of the pool); Sex Offender

Rules, ¶¶ 13 (prohibiting Appellant from "view[ing] any … images which depict individuals similar to [his] victims (*e.g.* children).…"), 18 (prohibiting Appellant from "accept[ing] employment … that directly or indirectly involves minors.…"), 20 (prohibiting Appellant from visiting a swimming pool). PO Warner directed Appellant to cease his maintenance employment and "downgrade" his smartphone to a phone without internet access. N.T., 9/5/23, at 9.

The trial court determined PO Warner's suspension of Appellant's smartphone privileges was not "a unilateral taking" of Appellant's smartphone, but was prompted by Appellant's conduct in violation of the Sex Offender Rules. Trial Court Opinion, 3/19/24, at 4 (quoting N.T., 11/20/23, at 11). As the trial court observed, after "PO Warner made it clear that Appellant's smartphone was no longer an authorized device," Appellant "failed to discontinue use of the unauthorized smartphone.…" *Id.* at 8. After PO Warner seized that smartphone, Appellant "began using a second unauthorized [smartphone] device belonging to his mother. When questioned about the second unauthorized smartphone, Appellant misrepresented his use of the device."[5] *Id.* The trial court found Appellant's continued use of "both

---

[5] Sex Offender Rule 9 provides: "I understand that any statements, verbal or written, made by me to my probation/parole officer which are subsequently found to be false, may be considered a violation of my probation/parole." Sex Offender Rules, ¶ 9.

unauthorized smartphones" to be "a clear violation of Rule 23…." *Id.* We agree.

Our review discloses no error or abuse of discretion in the trial court's conclusion that Appellant violated his probation. Accordingly, Appellant's issue merits no relief.[6]

---

[6] Appellant also argues "the complete internet ban imposed" by PO Warner violated Appellant's First Amendment right to internet access. Appellant's Brief at 28; *see also id.* at 23-29. Appellant insists we must adopt his interpretation of "the applicable sex offender rules" to render those rules "consistent with the United States Constitution." *Id.* at 23. However, as Appellant failed to identify this constitutional argument in his Pa.R.A.P. 1925(b) concise statement, we deem it waived. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020) ("It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review."); *see also* Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court; [however,] **this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal**." (emphasis added)).

Even if the argument were not waived, it would not merit relief, as the cases Appellant cites are readily distinguishable. First, Appellant cites Pennsylvania cases involving internet-use restrictions imposed on defendants whose underlying crimes did not involve internet use. *See* Appellant's Brief at 24-25 (citing *Commonwealth v. Houtz*, 982 A.2d 537 (Pa. Super. 2009); *Commonwealth v. Starr*, 234 A.2d 755 (Pa. Super. 2020); *Commonwealth v. Carr*, 262 A.3d 561 (Pa. Super. 2021)). Second, Appellant cites federal cases involving stringent internet-use restrictions imposed at the outset of the defendants' supervision, where the court determined less restrictive alternatives were available. *See id.* at 26-27 (citing *United States v. Miller*, 594 F.3d 172 (3d Cir. 2010); *United States v. Albertson*, 645 F.3d 191 (3d Cir. 2011)). Here, Appellant's underlying crime involved internet use, and his supervision conditions initially allowed him less-restrictive internet privileges. His privileges were curtailed only after he used his smartphone to access inappropriate materials, visited a swimming pool, and engaged in employment involving minors. *See* Sex Offender Rules, ¶¶ 13, 18, 20. For these reasons, Appellant's case is distinguishable from the precedents cited in his brief.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/7/2024